# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Sarah Mercado, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | No. 1:21−cv−01743−JPW |
| | : | |
| Gregory M. Snyder, Judge of the | : | Hon. Jennifer P. Wilson |
| Court of Common Pleas of York | : | |
| County, Pennsylvania, in his official | : | |
| capacity only, | : | |
| | : | |
| Defendant. | : | |

## Brief in Support of Plaintiff Sarah Mercado's Emergency Motion for Preliminary Injunction and Expedited Hearing

**METTE, EVANS & WOODSIDE**

Aaron D. Martin
Pa. Atty. I.D. No. 76441
Stephen B. Edwards
Pa. Atty. I.D. No. 326453
3401 North Front Street
Harrisburg, PA  17110
(717) 232-5000
admartin@mette.com
sbedwards@mette.com

*Attorneys for Plaintiff,*
*Sarah Mercado*

Date: October 20, 2021.

**Table of Contents**

Table of Authorities …………………………………………………………..ii

I.  Factual Background …………………………………………………......1

II.  Question Presented ………………………………………………….…..5

III.  Argument …………………………………………………………...6

    A.  Standard for Issuance of Preliminary Injunction …………………………..6

    B.  Mercado is Likely to Prevail on the Merits of Her Request to Enjoin
    Enforcement of the Prior Restraint Orders ……………….......................7

        1.  Prior Restraints Bear a Heavy Presumption of Unconstitutionality ……..7

        2.  Mercado's Publication of the CYF Documents is Speech
        Relating to a Matter of Public Concern ……………….......................11

        3.  The First Amendment Strongly Disfavors Restrictions on Publication
        of Truthful Information Relating to a Matter of Public Concern ………13

    C.  The Prior Restraint Orders are Inflicting Irreparable Injury Upon
    Mercado's Right to Engage in Free Speech About Matters of
    Public Concern …………………………………………………………17

    D.  Any Risk of Harm to Interested Persons Issuing from an Injunction
    Against Enforcement of the Prior Restraint Orders is Remote ……………19

    E.  The Public Interest Favors Entry of a Preliminary Injunction ……………20

Conclusion …………………………………………………………………..21

Certificate of Compliance

Exhibit A – Verified Statement of Sarah Mercado

Exhibit B – State Court Order of October 11, 2021

Exhibit C – State Court Order of October 12, 2021

# Table of Authorities

**CASES**

*Abu-Jamal v. Price,* 154 F.3d 128 (3d Cir. 1998) ........................................17

*ACLU v. Mukasey,* 534 F.3d 191 (3d Cir. 2008)...........................................14

*AM. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.,* 42
 F.3d 1421 (3d Cir. 1994)......................................................................20

*Ashcroft v. ACLU*, 542 U.S. 656 (2004)....................................................7, 15

*Bartnicki v. Vopper,* 532 U.S. 514 (2001)............................................ passim

*Burson v. Freeman,* 504 U.S. 191 (1992)...................................................14

*Butterworth v. Smith,* 494 U.S. 624 (1990) ...............................................12

*Citizens United v. FEC*, 558 U.S. 310 (2010) ..............................................12

*De Jonge v. Oregon*, 299 U.S. 353 (1937) ..................................................18

*Del. River Port Auth. v. Transamerican Trailer Transport, Inc.*,
 501 F.2d 917 (3d Cir. 1974)....................................................................6

*Elrod v. Burns,* 427 U.S. 347 (1976).....................................................17, 18

*Florida Star v. B.J.F.*,  491 U.S. 524 (1989)...........................................15, 16

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, et
 al.*, 546 U.S. 418 (2006) ..........................................................................7

*Jean v. Massachusetts State Police*, 492 F.3d 24 (1st Cir. 2007) .............9, 10

*Landmark Communications, Inc. v. Virginia*, 435 U.S. 829 (1978)  12, 14, 16

*Mills v. Alabama,* 384 U.S. 214 (1966)................................................. 12, 18

*Near v. Minnesota*, 283 U.S. 697 (1931)......................................................11

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976)............................ 17, 19

*New York Times Co. v. Sullivan,* 376 U.S. 254 (1964) .......................... 12, 18

*New York Times Co. v. United States*, 403 U.S. 713 (1971) ..........................8

*Pennekamp v. Florida*, 328 U.S. 331 (1946)..................................................14

*Pennsylvania Prof'l Liab. Joint Underwriting Ass'n v. Wolf,* 328
F. Supp. 3d 400 (M.D. Pa. 2016) ........................................................20

*Reilly v. City of Harrisburg*, 858 F.3d 173 *as amended* (June 26,
2017) (3d Cir. 2017)............................................................... 6, 7, 19, 20

*Smith v. Daily Mail Pub. Co.*, 443 U.S. 97 (1979).................... 10, 13, 14, 16

*Stilp v. Contino*, 613 F.3d 405 (3d Cir. 2010) ........................... 13, 14, 18, 19

*Swartzwelder v. McNeilly,* 297 F.3d 228 (3d Cir. 2002).............................17

*Terminiello v. Chicago*, 337 U.S. 1 (1949) ...................................................18

*Thalheimer v. City of San Diego*, 645 F.3d 1109 (9th Cir. 2011) .................6

*Williams-Yulee v. Florida Bar,* 575 U.S. 433 (2015)....................................14

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. I ……………………………………………….passim

## I.      Factual Background

Plaintiff Sarah Mercado ("Mercado") is an adult individual residing in

Adams County, Pennsylvania.  See Verified Statement of Sarah Mercado ("Ver.

Stmt.") ¶ 1, Exhibit A.  Defendant Gregory M. Snyder ("State Court Judge") is a

judge of the Court of Common Pleas of York County, Pennsylvania ("State

Court").  *Id*. at ¶ 2.

York County District Attorney David W. Sunday, Jr. ("Sunday"), has

charged Tyree M. Bowie ("Bowie"), an adult male, in the death of D.M. ("D.M."),

a two year-old child.  *Id*. at ¶ 3.  Mercado is D.M.'s aunt.  *Id*. at ¶ 4.  The case

against Bowie is now pending in the York County Court of Common Pleas at

criminal action no. 7558-2018.  *Id*. at ¶ 5.  The charges maintained by Sunday

against Bowie include a count of murder in the first degree.  *Id*. at ¶ 6.  In the

course of Bowie's case, Bowie obtained various documents in discovery

concerning the investigation into D.M.'s death.  *Id*. at ¶ 7.

Among the documents produced to Bowie in discovery were certain

documents generated by the York County Office of Children, Youth and Families

("York County CYF") in response to Mercado's report ("CYF Documents").  *Id*. at

¶ 9.  Prior to D.M.'s death, Mercado had made a report to York County CYF

pleading for intervention to protect D.M.'s welfare.  *Id*. at ¶ 8.  The CYF

Documents included information taken from a statewide database maintained by

the Pennsylvania Department of Human Services ("Pa DHS") that contains

information including reports, investigations and determinations of suspected child

abuse ("Statewide Database").  *Id*. at ¶ 10.  After receiving the CYF Documents,

Bowie transmitted the same to Mercado.  *Id*. at ¶ 11.

Mercado believes and has publicly asserted that Bowie is innocent of D.M.'s

murder and that York County CYF failed to take appropriate steps against the

actual guilty party despite her report to that agency.  *Id*. at ¶ 12.  Mercado created a

Facebook group more than a year ago known as "Justice for Dante," alternately

known as "justicefordante815," in support of her beliefs, and she has used the

group Facebook page to publish various of the CYF Documents online and to

condemn York County CYF's failure to act in the face of her report seeking

D.M.'s protection.  *Id*. at ¶ 13.

On October 11, 2021, Mercado became aware of the issuance of an order of

the State Court Judge in the case against Bowie ("October 11, 2021 Order") that

facially purports to restrain every person on earth in possession of the CYF

Documents, including those already posted to the internet, from disseminating such

documents and ordering that any such documents already posted online be taken

down.  *Id*. at ¶ 14.  A copy of the October 11, 2021 Order is attached as Exhibit B.

The October 11, 2021 Order states,

**ORDER**

AND NOW, TO WIT, it is hereby ordered and directed that any individuals in possession of any discovery material and/or Confidential Child Protective Services records related to D.M. and the prosecution of the above-captioned matter are hereby precluded from disseminating or distributing those records unless permitted by further Order of Court. Distribution shall include physically providing, mailing, emailing, and/or posting on the internet. All records that have been posted on the internet shall be removed.

/s/ Gregory M. Snyder
The Honorable Gregory M. Snyder

*Id*. at ¶ 15; Exhibit B.

On October 12, 2021, the State Court Judge issued a second order in the case against Bowie ("October 12, 2021 Order") which is nearly identical to the October 11, 2021 Order. *Id*. at ¶ 16. A copy of the October 12, 2021 Order is attached as Exhibit C.

The October 12, 2021 Order contains the following additional language,

Copies of this order shall be provided to the Clerk of Courts; Attorney Farley Holt, Counsel for Defendant; Attorney Erin Kraska of the District Attorney's Office and Attorney Aaron Martin, Counsel for Sarah Mercado and Victoria Schrader.

*Id*. at ¶ 17; Exhibit C.[1]

Mercado is not a party to Bowie's case, nor was she given any notice of any request for the issuance of either of the Prior Restraint Orders. *Id*. at ¶ 18. She

---

[1] The October 11, 2021 Order and October 12, 2021 Order care referred to collectively herein as the "Prior Restraint Orders."

3

was not given any opportunity to be heard on the issuance of either order, nor was she given any notice that either of the Prior Restraint Orders had been issued until October 11, 2021, and October 12, 2021, respectively. *Id*. at ¶ 19.

Because the Prior Restraint Orders were issued in a case in which Mercado has no standing as a party, Mercado was not afforded an opportunity by the State Court Judge to contest either order prior to its issuance. *Id*. at ¶ 21. Nevertheless, the orders purported to immediately gag Mercado from further disseminating the CYF Documents or even maintaining online any such documents as Mercado had already uploaded. *Id*. at ¶ 22. The Prior Restraint Orders substantially burden Mercado's ability to continue her public advocacy campaign against the York County CYF by using the CYF Documents, which she asserts establish the agency's failures. *Id*. at ¶ 20.

Neither the State Court Judge, Sunday nor any other state or private actor offered or afforded to Mercado notice of any request for the Prior Restraint Orders, and Mercado in fact had no notice of any such request prior to their issuance, despite the orders being mandatory in nature, seeking to coerce Mercado to undertake affirmative action in derogation of her right of free speech. *Id*. at ¶ 23.

The Prior Restraint Orders have put Mercado in reasonable fear of civil and/or criminal consequences in the nature of coercive orders and/or punishment through the State Court's contempt powers if she should continue to exercise her

4

First Amendment right of free speech to further publish and distribute the CYF Documents or even simply to leave online any CYF Documents she has already posted. *Id*. at ¶ 24. The CYF Documents provide information about the operations of Pennsylvania state and local government. *Id*. at ¶ 25.

Without a preliminary injunction, Mercado will suffer imminent and irreparable harm and her speech will be chilled because of the threat of civil and criminal sanctions for dissemination of discovery and/or the CYF Documents, even if she should simply fail to remove from the internet documents she has previously uploaded. *Id*. at ¶ 26.

Mercado has no adequate remedy at law, because she is under threat of imminent adverse legal consequences if she should further disseminate the discovery or CYF Documents she received from Bowie or even fail to take down any of the same that she has uploaded and available online. *Id*. at ¶ 27.

## II.   Question Presented

Whether the Court should preliminarily enjoin enforcement of the Prior Restraint Orders.

Suggested answer: Yes.

### III.    Argument

### A.    Standard for Issuance of Preliminary Injunction

"[T]o obtain a preliminary injunction the moving party must show as a prerequisite (1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured ... if relief is not granted.... [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." *Reilly v. City of Harrisburg*, 858 F.3d 173, 176, *as amended* (June 26, 2017) (3d Cir. 2017)[2] (citing *Del. River Port Auth. v. Transamerican Trailer Transport, Inc.*, 501 F.2d 917, 919–20 (3d Cir. 1974) (citations omitted)).  "[A] district court—in its sound discretion—should balance those four factors so long as the party seeking the injunction meets the threshold on the first two."  *Id*. at 176-77 (citations omitted).

In First Amendment cases where the government bears the burden of proof on the ultimate question of constitutionality, the burden shifts to the government when a moving party pleads a colorable claim against a governmental restriction on speech.  *Reilly*, 858 F.3d at 180 n.5 (citing *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011)) ("[I]n the First Amendment context, the moving

---

[2]  Omitting "*as amended* (June 26, 2017)" from *Reilly* citations *passim.*

6

party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction.")).

Because of the shifted burden, a plaintiff "must be deemed likely to prevail for the purpose of considering a preliminary injunction unless the government has shown that [a plaintiff's] proposed less restrictive alternatives are less effective than the statute." *Reilly*, 858 F.3d at 180 (quoting *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004)) (cleaned up). "This is because 'the burdens at the preliminary injunction stage track the burdens at trial,' and for First Amendment purposes they rest with the government." *Id*. (quoting *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, et al.*, 546 U.S. 418, 429 (2006)).

Because the Prior Restraint Orders unquestionably restrict Mercado's speech, the State Court Judge is required to establish their constitutionality.

**B.    Mercado is Likely to Prevail on the Merits of Her Request to Enjoin Enforcement of the Prior Restraint Orders**

**1.    Prior Restraints Bear a Heavy Presumption of Unconstitutionality**

At the height of the Vietnam Conflict, the United States Supreme Court considered consolidated cases brought by the United States against The New York Times and The Washington Post seeking to enjoin the two newspapers from publishing a government study entitled "History of U.S. Decision-Making Process

on Viet Nam Policy." See *New York Times Co. v. United States*, 403 U.S. 713 (1971). The collected documents contained in the study were popularly known as the "Pentagon Papers."

In rejecting the government's asserted national security justification for the requested injunctions, the Court stated, "Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity … The Government thus carries a heavy burden of showing justification for the imposition of such a restraint." *Id*. (cleaned up) (citations omitted). The "Pentagon Papers" had been classified prior to their disclosure to the two newspapers. The Court nevertheless allowed publication of their contents and free reporting thereon, holding that the First Amendment demanded no less.

In the 2001 case of *Bartnicki v. Vopper,* 532 U.S. 514 (2001), the Court made clear that the First Amendment's protection extended even to the publication of information obtained unlawfully by a third party as a result of a criminal act. In *Bartnicki* a teachers' union and a local school board were engaged in protracted, highly publicized negotiations over teacher pay raises. *Id.* at 518. During a break in the negotiations, a union representative called another representative from her car phone to discuss the status of the talks. During the call, one of the representatives made comments suggesting the union would need to use violence to intimidate some of the school board members who would not acquiesce in the

union's demands.  *Id.* at 518-19.  As it turned out, an anonymous eavesdropper intercepted and recorded the call.  The eavesdropper left a tape of the conversation with a local political activist, who shared it with a local radio personality, who in turn proceeded to broadcast it on the next edition of his program.  *Id.* at 518.

The broadcast spurred the union to sue the activist and the radio host under both the Pennsylvania and federal wiretap statutes.  Even though the two had unquestionably violated the wiretap law by "intentionally disclos[ing]… the contents of an [intercepted] wire, oral, or electronic communication," the Supreme Court held that the First Amendment barred the lawsuit.  *Id.* at 520 n.3.  Citing the "core purposes of the First Amendment" to promote debate on public issues, the Court held that "persons who lawfully obtained access to the contents of an illegally intercepted message" are entitled to publish the contents of the message so long as the message is truthful and touches on a matter of public concern.  *Id.* at 533-34.  This holding applies even when the publishing party has reason to know the message was obtained illegally.  *Id.* at 525 (noting that "at a minimum, respondents had reason to know that [the interception of the message] was unlawful").

In a case with even more poignant application to the matter *sub judice*, the First Circuit in *Jean v. Massachusetts State Police*, 492 F.3d 24 (1st Cir. 2007), applied the Supreme Court's holding in *Bartnicki*'s to shield from prosecution a

private citizen who posted an illegally recorded video of a warrantless home search conducted by the Massachusetts State Police. The citizen ran a website dedicated to criticizing a local district attorney through which a stranger contacted her to share the video. The court held that publication of the video was protected even though the citizen website operator happily agreed to accept the video in an email exchange with the stranger. *Id.* at 31-32.

In the instant case, Mercado seeks to publish the CYF Documents, which clearly touch on a matter of public concern. Even assuming *arguendo* that Bowie's act of transmitting the CYF Documents to her was itself illegal (which Mercado does not concede), the State Court Judge cannot as a matter of First Amendment jurisprudence under *Bartnicki* carry the burden of showing that suppression of such speech "further[s] a state interest of the highest order." *Smith v. Daily Mail*, 443 U.S. 97, 103 (1979). As noted *supra*, if potential jeopardy to the international geopolitical standing of the United States was not sufficient to sustain a prior restraint of publication of classified documents during time of war, no remotely tantamount concern can justify restraint of Mercado's publication and dissemination of the CYF Documents.

Publication of the CYF Documents by Mercado is no less protected under the First Amendment than was publication of the Pentagon Papers in *New York Times* or the contents of the illegal recordings in *Bartnicki* or *Jean*. The Prior

10

Restraint Orders, irrespective of any salutary intent on the part of the State Court Judge, unquestionably violate Mercado's First Amendment right of free speech and are subject to injunction against enforcement by this Court.

> **2.     Mercado's Publication of the CYF Documents is Speech Relating to a Matter of Public Concern**

An injunction against publication is a prior restraint. *Near v. Minnesota*, 283 U.S. 697 (1931).  The CYF Documents that Mercado desires to republish or otherwise distribute pertain to an ongoing public controversy: namely, the search for answers and accountability surrounding D.M.'s tragic death.  The disclosure of such information, including governmental documents and any information gleaned therefrom, is unquestionably protected speech under the First Amendment. *Bartnicki,* 532 U.S. at 527 ("if the acts of 'disclosing' and 'publishing' information do not constitute speech, it is hard to imagine what does fall within that category") (cleaned up).

It is also clear that Mercado's speech is political in nature.  As noted above, through publication of the CYF Documents, Mercado aims to publicize what she believes to be the failures and shortcomings of York County CYF which could have prevented her nephew's death.  The CYF Documents address questions relating to both the circumstances surrounding D.M.'s death as well as the agency's actions to investigate and secure D.M.'s welfare while he was alive.

They also call into question the propriety of Sunday's ongoing prosecution of Tyree Bowie for D.M.'s murder.

An individual's right to criticize government officials whom she believes to be failing in their duties to the public "l[ies] at the core of the First Amendment." *Butterworth v. Smith,* 494 U.S. 624, 632 (1990) (citations omitted). In fact, "there is practically universal agreement that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs[.]" *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 838 (1978) (quoting *Mills v. Alabama,* 384 U.S. 214, 218 (1966)).

Mercado's intended speech touches on a matter of public concern. Like political speech, truthful speech on matters of public concern "implicates the core purposes of the First Amendment." *Bartnicki,* 532 U.S. at 534. This principle reflects the United States' "profound national commitment" that discussion of public affairs should be "uninhibited, robust, and wide-open[.]" *Id.* (quoting *New York Times Co. v. Sullivan,* 376 U.S. 254, 269 (1964)); *cf. Citizens United v. FEC,* 558 U.S. 310, 340 (2010) (laws burdening political speech subject to strict scrutiny). It is clear, therefore, that Mercado's desire to criticize York County CYF and to advocate for justice for D.M. is protected speech about public affairs and affairs or political speech, any restriction of which defendants must justify in the crucible of strict scrutiny.

12

The content of the CYF Documents pertains to a matter of public concern in a broad sense, because the investigation and prevention (or lack thereof) of child abuse are of inherent concern to the public.  Mercado's speech also pertains to a matter of public concern in a specific sense, because it relates to the circumstances of, and the government's response to, the events both leading up to and following D.M.'s death.  The public's interest in this tragedy is evidenced by the fact that the "Justice for Dante" Facebook page has attracted a following of more than 4,000 people.  See Justice for Dante, *Facebook*, available at https://www.facebook.com/justiceforD.M.815/ (last accessed Aug. 26, 2021).

Because Mercado's intended speech is both political in nature and concerns a matter of public governance, the Prior Restraint Orders must satisfy strict scrutiny.  *Stilp v. Contino*, 613 F.3d 405, 409 (3d Cir. 2010) ("[r]estrictions on speech are subject to strict scrutiny").  Yet this is a test the orders cannot pass.

### 3. The First Amendment Strongly Disfavors Restrictions on Publication of Truthful Information Relating to a Matter of Public Concern

When a citizen "lawfully obtains truthful information about a matter of public significance… state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order." *Smith v. Daily Mail Pub. Co.*, 443 U.S. 97, 103 (1979).  To justify sanctions following publication of such information, "the substantive evil must be extremely

13

serious and the degree of imminence [of harm] extremely high before utterances can be punished." *Landmark Communications*, 435 U.S. at 845 (citations omitted) (cleaned up).  Furthermore, a "'solidity of evidence' is necessary to make the requisite showing of imminence." *Id.* (quoting *Pennekamp v. Florida*, 328 U.S. 331, 348 (1946)).  "The danger must not be remote or even probable; it must immediately imperil." *Id.* at 845 (citation omitted).

A government prohibition of speech must "(1) serve a compelling governmental interest; (2) be narrowly tailored to achieve that interest; and (3) be the least restrictive means of advancing that interest." *Stilp,* 613 F.3d at 409 (quoting *ACLU v. Mukasey,* 534 F.3d 191, 190 (3d Cir. 2008)).  The Supreme Court has expressed clear skepticism of the government's ability to satisfy this standard in any individual case.  See *Daily Mail*, 443 U.S. at 102 ("state action to punish the publication of truthful information seldom can satisfy constitutional standards"); *Bartnicki*, 532 U.S. at 527 (same) (quoting *Daily Mail*, 443 U.S. at 102).  This standard is exacting, and the Supreme Court has noted that "it is a rare case in which a State demonstrates that a speech restriction is narrowly tailored to serve a compelling interest." *Williams-Yulee v. Florida Bar,* 575 U.S. 433, 584 (2015) (quoting *Burson v. Freeman,* 504 U.S. 191, 211 (1992) (plurality opinion) (internal quotation marks omitted)).  As will be shown, application of the Prior Restraint Orders to Mercado is no such "rare case."

The Prior Restraint Orders themselves reveal no reason why they were issued by the State Court Judge.  And Mercado was denied prior notice, opportunity to respond, or hearing of any kind on any request that may have been made for them.  Ver. Stmt. ¶¶ 18-19, 23.  Axiomatically, these speech restrictions fall short of being "narrowly tailored" to serve any stated objective.  This is because the orders state no objective.  They are silent as to any objective against which the tailoring of their restrictions of speech can be judged.  Like Athena springing fully formed from the mind of Zeus, the orders appear on the scene without prior warning or explanation.

To be sustained, application of the Prior Restraint Orders to Mercado must be shown to be the "least restrictive means among available, effective alternatives" to effectuate their purpose.  *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004).  And a review of any alternatives to the sweeping extent of the Prior Restraint Orders must be conducted, because "[t]he purpose of [this] test is to ensure that speech is restricted *no further than necessary to achieve*" the State Court Judge's intended objective.  *Id.* (italics added).  "Where information is entrusted to the government, a less drastic means than punishing truthful publication almost always exists for guarding against the dissemination of private facts."  *The Florida Star v. B.J.F.*, 491 U.S. 524, 534 (1989).

Moreover, Mercado's constitutionally protected motives for publication should be borne in mind.  Mercado wishes to republish and otherwise distribute the CYF Documents to advocate for justice on behalf of her deceased grandson, to publicize the failure of York County CYF to adequately protect her grandson from abuse and prevent his death, and to support Tyree Bowie's innocence.  Thus, Mercado's intended speech concerns the government's performance of two of its most critical functions: stewarding the welfare of neglected children and administering the criminal law of this Commonwealth.  Any attempt by any state actor to restrict Mercado's speech on such subjects is constitutionally invalid unless it "serve[s] a state interest of the highest order." *Daily Mail*, 443 U.S. at 105.  The Prior Restraint Orders also hamstring public debate over the government's response to individual instances of child abuse.  *Cf. Landmark Communications*, 435 U.S. at 838 (First Amendment was ratified "to protect the free discussion of governmental affairs") (citation omitted); *The Florida Star*, 491 U.S. at 534 ("[w]here information is entrusted to the government, a less drastic means than punishing truthful publication almost always exists for guarding against the dissemination of private facts").

**C.    The Prior Restraint Orders are Inflicting Irreparable Injury Upon Mercado's Right to Engage in Free Speech About Matters of Public Concern**

The Supreme Court has recognized the immediate and irreversible damage caused by restrictions on speech such as the Prior Restraint Orders.

> A prior restraint … by definition, has an immediate and irreversible sanction.  If it can be said that a threat of criminal or civil sanctions after publication "chills" speech, prior restraint "freezes" it at least for the time.  The damage can be particularly great when the prior restraint falls upon the communication of news and commentary on current events.

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976) (footnote omitted).

Mercado wishes to publicly discuss how the CYF Documents reveal failures of the York CYF, as well as how the Documents cast doubt on the propriety of Bowie's murder prosecution.  The Prior Restraint Orders imminently and irreparably suppress Mercado's right to engage in this constitutionally protected speech.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Swartzwelder v. McNeilly,* 297 F.3d 228, 241 (3d Cir. 2002) (quoting *Elrod v. Burns,* 427 U.S. 347, 373 (1976) (plurality opinion)) (internal quotation marks omitted) (citing *Abu-Jamal v. Price,* 154 F.3d 128, 136 (3d Cir. 1998)).  Injunctive relief is "clearly appropriate" where "First Amendment interests [are] either threatened or in fact being impaired at the

17

time relief [i]s sought." *Stilp*, 613 F.3d at 409 n.4 (quoting *Elrod*, 427 U.S. at 373).

Mercado currently faces the threat of a contempt finding by the State Court Judge, with coercive and/or punitive orders likely ensuing therefrom, if she should exercise her right of free speech and further publish the CYF Documents. Contempt proceedings could arise even if she should merely fail to take down from the internet any such documents as she has already put online.  Such suppression of a private citizen's speech—especially one arising out of the clandestine circumstances of a legal proceeding to which Mercado was not even a party— violates the First Amendment.

Perhaps even more significant than the burden placed on Mercado's individual speech rights is the Prior Restraint Orders' harm to society at large.  The orders are directly at odds with the Unites States' "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open[.]" *New York Times Co.*, 376 U.S. at 270–71 (1964) (citing *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949); *De Jonge v. Oregon*, 299 U.S. 353, 365 (1937)).

As noted *supra*, the Prior Restraint Orders extend even to the media's publication of the CYF Documents, thereby placing discussion of their contents completely beyond public scrutiny and criticism – the very thing the First Amendment was meant to prevent.  *Mills*, 384 U.S. at 218 ("there is practically

18

universal agreement that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs"); *cf. Stilp,* 613 F.3d at 412 ("[S]peech about political processes…falls near to the core of the First Amendment[.]") (citations omitted)).

> **D. Any Risk of Harm to Interested Persons Issuing from an Injunction Against Enforcement of the Prior Restraint Orders is Remote**

A district court "in considering whether to grant a preliminary injunction, should take into account, when [] relevant…the possibility of harm to other interested persons from the grant or denial of the injunction[.]" *Reilly,* 858 F.3d at 176.

Here, it is impossible to credibly assert that harm would befall another party by Mercado's republication and further distribution of the information which Mercado published on the Facebook page "Justice for Dante." This is true for at least two reasons. First, Mercado has previously published lawfully obtained, identical information on the stated Facebook page, and it has consequently already been in the public domain for more than a year. Ver. Stmt., ¶ 13. Secondly, to justify a restraint such as the Prior Restraint Orders simply based on concerns of prejudicial pre-trial publicity, the orders would have to meet the exacting standards of *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976), and its progeny. The Prior Restraint Orders by their very nature fail to do so, because they contain no reason

for their issuance. Nor, to the best of Mercado's knowledge, was any factual record created in any place to support.[3] Thus, there is no apparent factual basis on which to conclude that any harm would befall a third party—or even the administration of justice generally—if enforcement of the Prior Restraint Orders would be enjoined.

### E.  The Public Interest Favors Entry of a Preliminary Injunction

A district court "in considering whether to grant a preliminary injunction, should take into account, when [] relevant…the public interest." *Reilly,* 858 F.3d at 176. "As a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *AM. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.,* 42 F.3d 1421, 1427, n. 8 (3d Cir. 1994). This Court has stated even more directly that "the public interest favors preliminary injunctive relief when a plaintiff has demonstrated both a likelihood of success on the merits and irreparable harm." *Pennsylvania Prof'l Liab. Joint Underwriting Ass'n v. Wolf,* 328 F. Supp. 3d 400, 411 (M.D. Pa. 2016) (Conner, J.) (collecting cases)).

---

[3]  Some entries appearing in the Bowie case are under seal, so Mercado does not know for certain whether an evidentiary hearing might have been conducted out of the sight of the public. *See* https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-67-CR-0007558-2018&dnh=zTRPfWNnkkMmkMQ1hxs5vQ%3D%3D (indicating "Sealed Entry" on 10/5/2021 and "Sealed Entry" on 10/12/2021) (last accessed October 20, 2021).

"This interest is particularly strong when the right at issue derives from the Constitution itself." *Id.*

Any injunction upholding the dictates of the First Amendment by enjoining enforcement of the Prior Restraint Orders is accordingly in the public interest.

## IV.   Conclusion

WHEREFORE, Sarah Mercado moves the Court to PRELIMINARILY ENJOIN Defendant Snyder from  enforcing the Prior Restraint Orders through contempt proceedings, the issuance of further coercive or penal orders, judgments or decrees, or taking any other adverse action of any kind against Mercado, for disseminating or distributing discovery material and/or Confidential Child Protective Services records related to D.M. and the prosecution of Tyree Bowie for the death of D.M., whether by physically providing, mailing, emailing, and/or posting the same on the internet or otherwise failing to remove any such documents from the internet that Mercado has already posted or uploaded, pending further order of this Court.

Respectfully submitted,

**METTE, EVANS & WOODSIDE**

By: _____

Aaron D. Martin
Pa. Attorney I.D. No. 76441
Stephen B. Edwards
Pa. Attorney I.D. No. 326453
3401 North Front Street
Harrisburg, PA 17110
(717) 232-5000
admartin@mette.com
sbedwards@mette.com

*Attorneys for Plaintiff,*
*Sarah Mercado*

Date: October 20, 2021.

22