## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SARAH MERCADO, | : | Civil No. 1:21-CV-01743 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| GREGORY M. SNYDER, Judge of the | : | |
| Court of Common Pleas of York County, | : | |
| in his official capacity, | : | |
| | : | |
| Defendant. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

This is an action seeking declaratory and injunctive relief filed by Plaintiff Sarah Mercado ("Mercado") against Gregory M. Snyder, a York County Court of Common Pleas Judge ("Judge Snyder"). Before the court is a motion to dismiss filed by Judge Snyder. (Doc. 10.) For the reasons that follow, the motion will be granted in part and denied in part. (*Id.*)

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

According to the complaint, on January 3, 2019, York County District Attorney David Sunday, Jr. charged Tyree M. Bowie ("Bowie") by criminal information with the murder of D.M., a two-year old child.[1] (Doc. 1, ¶¶ 6, 9.) Mercado is D.M.'s aunt, who believes that Bowie is innocent of D.M.'s murder and has been publicly advocating against his conviction since these charges were

---

[1] The criminal case against Bowie remains pending in the York County Court of Common Pleas at docket number 7558-2018. (Doc. 1, ¶ 8.)

filed. (*Id.* ¶¶ 7, 15.) As part of her advocacy efforts, Mercado maintains a Facebook group entitled "Justice for Dante" on which she posts her belief that Bowie is innocent, and that the York County Office of Children and Youth Services ("CYS") was the party responsible for failing D.M.[2] (*Id.* ¶ 16.)

During the course of discovery in his criminal case, Bowie received various documents concerning investigations into D.M.'s death, including documents from CYS. (*Id.* ¶¶ 10, 12.) Before D.M.'s death, Mercado made a report to CYS expressing concern for D.M.'s wellbeing. (*Id.* ¶ 11.) Mercado's report, and the documents associated with the investigation stemming therefrom, were part of the documents available to Bowie in his ongoing criminal case. (*Id.* ¶ 12.) After Bowie received these documents, he sent them to Mercado, who posted them to the Justice for Dante Facebook page as additional evidence of CYS's alleged failings surrounding D.M.'s death. (*Id.* ¶¶ 14, 16.)

On October 11, 2021, after these documents had been posted to the Justice for Dante Facebook page for over a year, Mercado became aware of an order entered in Bowie's criminal case by Judge Snyder that purported to restrain the dissemination of the CYS documents disclosed during discovery in Bowie's case

---

[2] Pending before the court are two other related cases at docket numbers 1:21-cv-1559 and 1:21-cv-1631. These cases bring claims for alleged First Amendment violations against the Attorney General and the York County District Attorney based on constitutional challenges to the confidentiality provisions in Pennsylvania's Child Protective Services Law. The challenged provision criminalizes disclosure of confidential child abuse records which are also at issue in this case.

and ordered that any documents already posted online be removed or taken down, including those posted to the Justice for Dante Facebook page. (*Id.* ¶ 17; Doc. 6, p. 23.)[3]  On October 12, 2021, Judge Snyder issued a second order, which is identical to the October 11, 2021 order, except that it directs copies of the order to be served on counsel for Mercado, who is not a party to Bowie's criminal case. (*Id.* ¶¶ 19–21.)  These orders (collectively, "gag orders") state that:

> AND NOW, TO WIT, it is hereby ordered and directed that any individuals in possession of any discovery material and/or Confidential Child Protective Services records related to D.M. and the prosecution of the above-captioned matter are hereby precluded from disseminating or distributing those records unless permitted by further Order of Court. Distribution shall include physically providing, mailing, emailing, and/or posting on the internet.  All records that have been posted on the internet shall be removed.

(*Id.* ¶¶ 18, 20.)  As a result, Mercado alleges that she faces contempt proceedings if she does not comply with Judge Snyder's gag orders, thus forcing her to remove all postings that have been available on the Justice for Dante Facebook page for over a year.  (Doc. 1-2, pp. 2, 4.)

Mercado filed the instant complaint on October 13, 2021, seeking declaratory and injunctive relief on the ground that Judge Snyder's gag orders unconstitutionally infringe on her First Amendment right to free speech and should

---

[3] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

not be enforced.[4]  (Doc. 1, pp. 9–10.)  On November 3, 2021, Judge Snyder filed

the instant motion to dismiss the complaint.  (Doc. 10.)  Mercado filed a brief in

opposition to this motion on December 6, 2021.  (Doc. 22.)  Judge Snyder timely

filed a reply brief.  (Doc. 26.)  Thus, the motion to dismiss is ripe for review.

### STANDARDS OF REVIEW

### A. 12(b)(1) Motion to Dismiss

Judge Snyder seeks dismissal of the complaint pursuant to Federal Rule of

Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.  The court, in

determining whether it has subject-matter jurisdiction, must decide "whether the

allegations on the face of the complaint, taken as true, allege facts sufficient to

invoke the jurisdiction of the district court."  *Taliaferro v. Darby Twp. Zoning Bd.*,

458 F.3d 181, 188 (3d Cir. 2006) (quoting *Licata v. U.S. Postal Serv.*, 33 F.3d 259,

260 (3d Cir. 1994)).  Rule 12(b)(1) challenges may be "facial" or "factual."  *See*

*Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  A

facial attack challenges whether jurisdiction has been properly pled and requires

---

[4] Mercado filed a motion for a preliminary injunction on October 20, 2021.  (Doc. 5.)  In preparing to resolve the motion, the court held a telephonic status conference with the parties on October 27, 2021 to set an expedited schedule for the resolution of this motion and to determine whether counsel for Judge Snyder anticipated filing a motion to dismiss the complaint.  (Doc. 8.)  During this call, defense counsel indicated that Judge Snyder planned to hold a hearing on the gag orders, thus presenting an opportunity for Mercado to be heard on her constitutional challenges.  (Doc. 8.)  Judge Snyder held such a hearing on November 5, 2021, but Mercado did not attend this proceeding, despite being given notice of its occurrence.  (Doc. 12.)  Since Mercado did not attend, Judge Snyder did not modify or rescind the gag orders.  (*Id.*)  The court denied the motion for a preliminary injunction on November 19, 2021.  (Doc. 19.)

the court to "only consider the allegations of the complaint and documents

referenced therein and attached thereto, in the light most favorable to the plaintiff."

*Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing

*Mortensen*, 549 F.2d at 891).  Conversely, when a defendant sets forth a factual

attack on subject-matter jurisdiction, "the Court is free to weigh the evidence and

satisfy itself whether it has power to hear the case. . . . 'no presumptive truthfulness

attaches to plaintiff's allegations, and the existence of disputed material facts will

not preclude the trial court from evaluating for itself the merits of jurisdictional

claims.'"  *Carpet Group Int'l v. Oriental Rug Importers Ass'n, Inc.*, 227 F.3d 62,

69 (3d Cir. 2000) (quoting *Mortensen*, 549 F.2d at 891).

In this case, Judge Snyder presents a facial attack on jurisdiction.  Thus, the

court will "only consider the allegations of the complaint and documents

referenced therein and attached thereto, in the light most favorable to the plaintiff."

*Gould Elecs., Inc.*, 220 F.3d at 176 (citing *Mortensen*, 549 F.2d at 891).

### B. 12(b)(6) Motion to Dismiss

In order "[t]o survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

## DISCUSSION

Judge Snyder presents three arguments in favor of dismissal. First, he argues that the court should abstain from reaching the merits of this case based on the *Younger*[5] abstention doctrine. (Doc. 18, pp. 6–14.) Second, that the court should decline to exercise its discretionary jurisdiction under the Declaratory Judgment Act. (*Id.* at 14–20.) Third, that judicial immunity bars suit against Judge Snyder in this case. (*Id.* at 20–23.) The court addresses these arguments below.

---

[5] *Younger v. Harris*, 401 U.S. 37 (1971).

### A. Abstention is Inappropriate in This Case.[6]

The Supreme Court has held that, as a general rule, "federal courts are obliged to decide cases within the scope of federal jurisdiction; abstention is not in order simply because a pending state-court proceeding involves the same subject matter." *Sprint Communs., Inc. v. Jacobs*, 571 U.S. 69, 72 (2013) (cleaned up) (citing *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 373 (1989) ("*NOPSI*") ("[T]here is no doctrine that . . . pendency of state judicial proceedings excludes the federal courts.")).  In other words, "the pendency of an action in state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

The *Younger* abstention doctrine was formed as an exception to this general rule, holding that federal courts must abstain from exercising their jurisdiction in cases with a parallel pending state criminal proceeding. *Younger v. Harris*, 401 U.S. 37 (1971).  *Younger* has since been extended by the Supreme Court to cases involving "state criminal prosecutions, civil enforcement proceedings, and civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Communs. Inc.*, 571 U.S.

---

[6] The court considers Judge Snyder's first two arguments together under the umbrella of abstention.

at 73 (cleaned up) (citing *NOPSI*, 491 U.S. at 367–68).  However, the Supreme

Court has emphasized that "[c]ircumstances fitting within the *Younger* doctrine . . .

are 'exceptional[.]'"  *Id.* at 73.

In an apparent effort to restrict federal courts from abstaining in cases over

which they could otherwise exercise jurisdiction, but recognizing that abstention

may nevertheless be appropriate in certain circumstances, the Supreme Court has

created several narrow categories of abstention in addition to the three categories

outlined in *Sprint*.  *Brillhart*/*Wilton* abstention is one such category arising in the

context of the Declaratory Judgment Act, which confers discretionary jurisdiction

on the federal courts.  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 290 (1995);

*Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942).  Under this category of the

abstention doctrine, "[r]ather than being subject to the 'normal principle that

federal courts should adjudicate claims within their jurisdiction,' district courts

exercising [their] discretion [under the Declaratory Judgment Act] are governed by

'considerations of practicality and wise judicial administration.'"  *Reifer v.

Westport Ins. Corp.*, 751 F.3d 129, 139 (3d Cir. 2014) (quoting *Wilton*, 515 U.S. at

288).

In addition, *Brillhart* is implicated in cases "where 'another proceeding [i]s

pending in a state court in which all the matters in controversy between the parties

could be fully adjudicated.'" *Id.* (quoting *Brillhart*, 316 U.S. at 495).  The

*Brillhart* Court reasoned that:

> [o]rdinarily it would be uneconomical as well as vexatious for a federal
> court to proceed in a declaratory judgment suit where another suit is
> pending in a state court presenting the same issues, not governed by
> federal law, between the same parties.  Gratuitous interference with the
> orderly and comprehensive disposition of a state court litigation should
> be avoided.

316 U.S. at 495.

In determining whether to exercise discretion to entertain litigation seeking

declaratory relief where a pending parallel state court proceeding exists, *Brillhart*

provided a non-exhaustive list of factors for courts to consider.  *Brillhart*'s

relevance was re-affirmed in *Wilton*, which emphasized the non-exhaustive nature

of *Brillhart*'s factors.  *Wilton*, 515 U.S. at 282, 289–90.  The Third Circuit has

explained that:

> *Brillhart* and *Wilton* stand for at least two broad principles: (1) that
> federal courts have substantial discretion to decide whether to exercise
> [Declaratory Judgment Act] jurisdiction, and (2) that this discretion is
> bounded and reviewable.  Accordingly, this Circuit has acknowledged
> the [Declaratory Judgment Act]'s grant of discretion while cautioning
> that "what is granted is an opportunity to exercise a reasoned
> discretion." *Bituminous Coal Operators' Ass'n v. Int'l Union, United
> Mine Workers of Am.*, 585 F.2d 586, 596 (3d Cir. 1978), abrogated on
> other grounds by *Carbon Fuel Co. v. United Mine Workers of Am.*, 444
> U.S. 212 (1979).  Thus, over the years we have enumerated factors for
> district courts to consider when exercising [Declaratory Judgment Act]
> discretion.  We have required district courts to consider four general
> factors:

>    (1) the likelihood that a federal court declaration will resolve the
>    uncertainty of obligation which gave rise to the controversy;
>
>    (2) the convenience of the parties;
>
>    (3) the public interest in settlement of the uncertainty of
>    obligation; and
>
>    (4) the availability and relative convenience of other remedies.
>
>    *Pa. Dep't of Envtl. Res.*, 923 F.2d at 1075 (citing *Terra Nova Ins. Co.
>    v. 900 Bar, Inc.*, 887 F.2d 1213, 1224 (3d Cir. 1989); *Bituminous Coal
>    Operators' Ass'n*, 585 F.2d at 596). We have also suggested that courts
>    "seek to prevent the use of the declaratory action as a method of
>    procedural fencing, or as a means to provide another forum in a race for
>    res judicata." *Terra Nova*, 887 F.2d at 1225 (quoting 6A J. Moore, J.
>    Lucas & G. Girtheer, Jr., Moore's Federal Practice ¶ 57.08[5], at 57-50
>    (2d ed. 1987)).

*Reifer*, 751 F.3d at 140. In addition to the factors listed above, the Third Circuit in

*Reifer* held that courts should consider: "a general policy of restraint when the

same issues are pending in a state court;" "avoidance of duplicative litigation;" and

"prevention of the use of the declaratory action as a method of procedural fencing

or as a means to provide another forum in a race for res judicata[,]" emphasizing

again that these factors are not exhaustive. *Id.* at 146. Despite this seemingly

broad grant of discretion, the Third Circuit has re-emphasized that "'the mere

existence of a related state court proceeding' does not require a district court to

decline to exercise jurisdiction" under the Declaratory Judgment Act. *United

States v. Pa. Dep't of Envtl. Res.*, 923 F.2d 1071, 1075 (3d Cir. 1991) (citing

*Brillhart*, 316 U.S. at 495).

Before considering these factors, the Third Circuit has held that courts "should first determine whether there is a 'parallel state proceeding.'"  *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 282 (3d Cir. 2017) (quoting *Reifer*, 751 F.3d at 143, 146).  The existence of a parallel state proceeding "is a significant factor that is treated with 'increased emphasis.'"  *Id.* (quoting *Reifer*, 751 F.3d at 144).  Therefore, while "the absence of pending parallel state proceedings militates significantly in favor of exercising jurisdiction, . . . it alone does not require such an exercise."  *Reifer*, 751 F.3d at 144.

"[T]he mere potential or possibility that two proceedings will resolve related claims between the same parties is not sufficient to make those proceedings parallel; rather, there must be a substantial similarity in issues and parties between contemporaneously pending proceedings."  *Kelly*, 868 F.3d at 283–84.  The Third Circuit has explained that:

> A parallel state proceeding is a pending matter "involving the same parties and presenting [the] opportunity for ventilation of the same state law issues."  *Wilton*, 515 U.S. at 283; *see also State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 134 (3d Cir. 2000) (describing a parallel proceeding as one in which "the same issues are pending").  Germane factors include the scope of the state court proceeding, the claims and defenses asserted, and whether necessary parties had been or could be joined.  *See Brillhart*, 316 U.S. at 495; *see also Md. Cas. Co. v. Consumers Fin. Serv., Inc., of Pa.*, 101 F.2d 514, 515 (3d Cir. 1938) (explaining that a court may abstain from issuing a declaratory judgment that is "being sought merely to determine issues involved in cases already pending," but not "if the controversy between the parties will not necessarily be determined in" that pending action).  Such

analysis contemplates comparing the state and federal action as they contemporaneously exist, not as they might eventually be.

*Id.* at 284.

In other abstention contexts, such as *Younger* abstention, "cases are [considered] parallel when they involve the same parties and claims." *Ryan v. Johnson*, 115 F.3d 193, 196 (3d Cir. 1997).  Specifically, "parallel proceedings are those that are 'truly duplicative,' that is, when the parties and the claims are 'identical,' or at least 'effectively the same.'" *Kelly*, 868 F.3d at 286 (quoting *Trent v. Dial Med. of Fla., Inc.*, 33 F.3d 217, 223–24 (3d Cir. 1994), superseded by statute on other grounds as recognized in *Nat'l City Mortg. Co. v. Stephen*, 647 F.3d 78, 83 (3d Cir. 2011)).

Regardless of which abstention context the court considers, the Third Circuit has held that "proceedings are not parallel merely because of potentiality." *Id.* at 285.  In other words, "a state proceeding does not parallel a federal proceeding just because there is the potential that issues in the latter may arise in the former.  The proceedings must involve substantially similar parties and claims at the time the federal court is deciding whether to abstain." *Id.* at 284.

In this case, the court finds that the criminal case pending in the York County Court of Common Pleas is not a parallel proceeding to the instant case before this court.  Mercado is not a party to the Court of Common Pleas proceeding, and indeed has no reason to be since the Court of Common Pleas

proceeding is the criminal prosecution of Bowie.  As it stands, Mercado is only

implicated in the Court of Common Pleas proceeding because she is subject to the

tangential "gag orders" entered by Judge Snyder.  However, the fact that she is

subject to the "gag orders" does not make her a participant or a party to Bowie's

criminal prosecution.  Moreover, Judge Snyder is not a litigant in Bowie's criminal

prosecution.  Thus, neither party in this case is a party in the Court of Common

Pleas proceeding and the subject matter of the cases is vastly different.  The mere

fact that the "gag orders" that Mercado claims are unconstitutional were entered in

Bowie's criminal case does not make these cases parallel.  At most, there exists the

potential for Judge Snyder to resolve the constitutional questions presented in the

instant litigation as a tangential matter in Bowie's prosecution.[7]  However, as the

court has already stated, "proceedings are not parallel merely because of

potentiality."  *Kelly*, 868 F.3d at 285.

    Therefore, the court finds that there is not a parallel state proceeding for the

purpose of considering abstention.[8]  However, as emphasized by the Third Circuit,

---

[7] Indeed, Judge Snyder afforded Mercado an opportunity to be heard on the protective orders, which she declined.

[8] This analysis is equally applicable to Judge Snyder's assertion that the court should abstain under the *Younger* abstention doctrine.  In addition, on this score, Judge Snyder has cited no authority, and the court has not independently found any, which would allow for the broad application of the *Younger* doctrine to a context such as the one presented in this case where the federal court plaintiff is neither a party to the underlying criminal proceeding, nor whose interests are necessarily aligned with the criminal defendant's.  Bearing in mind the exceptional circumstances in which abstention is appropriate, the court finds that such a broad construction

"the existence or non-existence of pending parallel state proceedings is important in a court's assessment, [but] it is not dispositive."  *Kelly*, 868 F.3d at 288 (quoting *Reifer*, 751 F.3d at 143–44) (quotation marks omitted).  Therefore, the court turns to consideration of the *Reifer* factors.

### 1. First Factor: The likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy

With respect to the first factor for the court's consideration, the Third Circuit has recently explained that: "[t]he first *Reifer* factor is not intended to be a vehicle for considering the effect of a declaratory judgment on the development of state law."  *DiAnoia's Eatery, LLC v. Motorists Mut. Ins. Co.*, 10 F.4th 192, 205 (3d Cir. 2021).  Rather, "the first *Reifer* factor captures whether a declaration would bring about a 'complete termination of the controversy' between the parties and thereby avoid duplicative, piecemeal litigation."  *Id.* at 205.  The Third Circuit has stated that a declaration from a federal court will be unlikely to prevent further litigation "(1) when one or more persons have not been joined, but have an interest in the outcome of the action, and (2) when one or more issues have not been raised, but are a part of the controversy or uncertainty."  *Id.* at 205–06.

---

of this precedent is unwarranted here.  The court will accordingly decline to abstain under the *Younger* abstention doctrine.

In this case, a declaration from this court would resolve the constitutional issues presented by Mercado, specifically, whether the "gag orders" violate Mercado's First Amendment rights. While the court's ruling could peripherally affect other individuals who have not been joined to the instant case, i.e., Bowie and the Commonwealth, the court finds that in the event that these individuals are not joined, Judge Snyder would otherwise be capable of representing their interests since he is responsible for overseeing and ensuring that Bowie receives a fair and impartial criminal trial. Therefore, the first factor weighs against abstention.

### 2. Second Factor: The convenience of the parties

The court finds that the second factor, the convenience of the parties, does not weigh heavily in favor of exercising jurisdiction versus abstention in this case. Mercado appears to believe that it would be more convenient to litigate these issues in this court based on her expressed preference to litigate in a federal forum. In addition, since Mercado is not a party to Bowie's criminal case, Mercado has a clearer forum and appeals path with which to proceed on her claims. For his part, Judge Snyder argues that abstention would allow the parties to consider the constitutionality of the "gag orders" in the forum in which it arose. In other words, Judge Snyder could allow Mercado to present her arguments and once again reconsider whether the "gag orders" should stand without perhaps premature interference from this court.

In addition to these considerations, the court notes that both the York County Court of Common Pleas and this court are located in central Pennsylvania. Therefore, there is not a more convenient forum for either party based on the location of the tribunal.  On balance, considering the parties' competing arguments, the court finds that this factor is neutral with respect to the court's abstention analysis.

### 3.  Third Factor: The public interest in settlement of the uncertainty of obligation

With respect to the third *Reifer* factor, the Third Circuit has stated that comity concerns do not give federal courts carte blanche to abstain.  *Kelly*, 868 F.3d at 288 n.13.  Instead, the Third Circuit has expressed a preference for courts to "squarely address the alleged novelty of [the] state law claims[,]" rather than declining jurisdiction because of "the importance of respecting the ability of the [state] court system" to enforce state law.  *Reifer*, 751 F.3d at 149.

In this case, Mercado argues that the public interests of preserving the right to free speech and "preserving a federal mechanism for vindication of constitutional rights when state officials fail to do so" justify this court in retaining jurisdiction over the pending disputes.  (Doc. 22, p. 19.)  Judge Snyder asserts that "principles of federalism and comity mandate that the state courts make decisions governing trials before them" and that "requiring Judge Snyder to defend his judicial Order in this court does not 'serve well the public interest or the interests

in practicality and wise judicial administration.'"  (Doc. 18, pp. 17–19 (quoting

*Waris v. Frick*, No. 06-5189, 2007 WL 954108, at *9 (E.D. Pa. Mar. 28, 2007)).)

The court finds that the parties have advanced equally important and

competing public interests.  Since the court finds that one set of interests does not

outweigh or overtake the other, the court finds that this factor does not weigh in

favor of or against abstention.

### 4.  Fourth Factor: The availability and relative convenience of other remedies

The court finds that the fourth factor, the availability and relative

convenience of other remedies, weighs slightly in favor of abstention in this case.

As Judge Snyder argues, Mercado "had and still has adequate remedies in State

Court." (Doc. 18, p. 19.)  Indeed, Judge Snyder held a hearing that Mercado could

have attended to raise her constitutional concerns in an attempt to persuade Judge

Snyder to reconsider his "gag orders."  Judge Snyder seems to imply that this

avenue for relief could also exist in the future.  Thus, a remedy was available to

Mercado, and may be available in the future, but she chose not to avail herself of it.

This, however, does not mean that this court is unable to decide the constitutional

issues which have been presented.  As the court has already explained, neither

venue is more convenient for the parties and both the state and federal courts are

prepared to consider the constitutional questions presented by Mercado.

Therefore, this factor weighs only slightly in favor of abstention.

### 5. Fifth Factor: The general policy of restraint when the same issues are pending in a state court

The Third Circuit has clarified that the fifth *Reifer* factor's "'policy of restraint' is applicable only when the 'same issues' are pending in state court between the same parties, not when the 'same issues' are merely the same legal questions pending in any state proceeding." *DiAnoia's Eatery, LLC*, 10 F.4th at 206 (citing *Kelly*, 868 F.3d at 289 (holding fifth factor inapplicable where "issue of [insurer's] obligations under its insurance policy with [insured] is not pending in a state court" and "[insurer] is not even a party in the pending state court action and the insurance coverage dispute cannot be fully resolved without [insurer]"); *Brillhart*, 316 U.S. at 495 ("Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.")).

The court finds that the fifth factor is not implicated in this case. Indeed, the only litigation currently pending in the state court is the criminal prosecution of Bowie. Moreover, as the court has already explained, the state and federal court litigation do not involve the same parties.

### 6. Sixth Factor: Avoidance of duplicative litigation

For the same reasons addressed with respect to the fifth factor, the sixth *Reifer* factor is not implicated in this case.

**7. Seventh Factor: Prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata**

The court finds that the seventh factor weighs slightly in favor of abstention in this case. The court has some concern that Mercado perceives a greater chance of success in federal court than by challenging Judge Snyder's orders directly with Judge Snyder himself. Supporting this concern is Mercado's decision not to appear for the hearing convened by Judge Snyder to be heard on the "gag orders." However, there is no evidence that Mercado instituted the instant case as a means to engage in gamesmanship or in a race for res judicata. Indeed, she has not requested expedited resolution of this case outside of her request for a preliminary injunction, which the court has already denied.

Therefore, the seventh *Reifer* factor weighs slightly in favor of abstention.

**8. Balancing**

Taking all the *Reifer* factors together, the court notes that none weigh heavily in favor of abstention in this case. To the contrary, the weightiest factor, the lack of a parallel state court proceeding, "militates significantly in favor of exercising jurisdiction" in this matter. *Reifer*, 751 F.3d at 144. Only factors four and seven weight slightly in favor of abstention, and the remaining factors either do not favor abstention, are neutral, or do not otherwise apply in this case.

Therefore, in the exercise of its discretion, the court will decline to abstain from further action in this case.[9]

## B. Judicial Immunity Bars Mercado's Claim for Injunctive Relief.

As stated by the Court of Appeals for the Third Circuit, "[i]t is a well-settled principle of law that judges are generally 'immune from a suit for money damages.'" *Allen v. Debello*, 861 F.3d 433, 439 (3d Cir. 2017) (quoting *Figueroa v. Blackburn*, 208 F.3d 435, 440 (3d Cir. 2000)). However, judges may still be subject to lawsuits under certain, limited circumstances. (*Id.*) The Federal Courts Improvement Act of 1996 amended 42 U.S.C. § 1983 to state that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."[10] 42 U.S.C. § 1983. While the amended language "does not expressly authorize suits for declaratory relief against judges[,] . . . it implicitly recognizes that declaratory relief is available in some circumstances, and then limits the availability of injunctive relief to circumstances in which declaratory relief is unavailable or inadequate." *Allen*, 861 F.3d at 339 (quoting *Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194, 197–98 (3d Cir.

---

[9] The court finds that it otherwise has jurisdiction to preside over this case under 28 U.S.C. § 1331 because this case presents a federal question.

[10] The Court of Appeals for the Third Circuit has found that this statutory amendment applies to both state and federal judges. *See Azubuko v. Royal*, 443 F.3d 302, 304 (3d Cir. 2006).

2000)).  In other words, the only way that a plaintiff can obtain injunctive relief

against a state court judge for issuing an allegedly unconstitutional order is to

demonstrate that the judge violated a prior declaratory judgment or that declaratory

relief is unavailable.  *Argen v. Kessler*, No. 18-963, 2018 U.S. Dist. LEXIS

168238, at *14 (D.N.J. Sept. 28, 2018).

The court has already found that "Judge Snyder's issuance of the gag orders

was a judicial act taken in his judicial capacity."  (Doc. 19, p. 8.)  Mercado does

not question this finding.  Thus, the only way that Mercado can obtain injunctive

relief against Judge Snyder for the issuance of the "gag orders" is to demonstrate

that Judge Snyder violated a prior declaratory judgment or that declaratory relief is

unavailable to her.  *Argen*, 2018 U.S. Dist. LEXIS 168238, at *14.

In this case, Mercado does not allege that a declaratory decree was violated

or that declaratory relief is unavailable.  To the contrary, Mercado seeks

declaratory relief in her complaint.  Because Mercado has not alleged that a

declaratory decree was violated or that declaratory relief is unavailable, and

because the injunctive relief sought by Mercado does not address the actions of

Judge Snyder other than in his judicial capacity, her claim for injunctive relief is

barred.  *See Azubuko*, 443 F.3d at 304 (barring a claim for injunctive relief where

the plaintiff had not alleged that a declaratory decree was violated or that

declaratory relief was unavailable); *Thompson v. Rush*, No. 1:15-cv-1927, 2018

U.S. Dist. LEXIS 183318, at *15 (M.D. Pa. Oct. 24, 2018) (same), report and

recommendation adopted at 2019 U.S. Dist. LEXIS 43142 (M.D. Pa. Mar. 18,

2019); *Ridge v. Campbell*, 984 F. Supp. 2d 364, 373 (M.D. Pa. 2013) (same).  The

court will accordingly grant the motion to dismiss the claim for injunctive relief.

## CONCLUSION

For the foregoing reasons, the motion to dismiss filed by Defendant, Doc.

10, will be granted in part and denied in part.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: May 20, 2022