# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SARAH MERCADO, | Civil No. 1:21-CV-01743 |
| Plaintiff, | |
| v. | |
| GREGORY M. SNYDER, Judge of the Court of Common Pleas of York County, in his official capacity, | |
| Defendant. | Judge Jennifer P. Wilson |

## MEMORANDUM

This is an action seeking declaratory and injunctive relief filed by Plaintiff Sarah Mercado ("Mercado") against Gregory M. Snyder, a York County Court of Common Pleas Judge ("Judge Snyder"). Because the court finds that this case is moot, the court lacks jurisdiction to hear this action. As a result, the court will dismiss this action.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

According to the complaint, on January 3, 2019, York County District Attorney David Sunday, Jr. ("District Attorney Sunday"), on behalf of the Commonwealth of Pennsylvania ("Commonwealth"), charged Tyree M. Bowie ("Bowie") by criminal information with the murder of D.M., a two-year old child.

---

[1] Any additional factual recitation that is necessary to understand the issues is included in the Discussion section of this memorandum. In addition, because the court writes primarily for the parties, this memorandum includes only the procedural history relevant to the case's current posture and determination of whether the case is moot.

1

(Doc. 1, ¶¶ 6, 9.)  Mercado is D.M.'s aunt, who believed that Bowie was not guilty of D.M.'s murder.  Mercado publicly advocated against Bowie's conviction from the time charges were filed against him.  (*Id.* ¶¶ 7, 15.)  As part of her advocacy efforts, Mercado maintained a Facebook group entitled "Justice for Dante" on which she posted her belief that Bowie was innocent and that the York County Office of Children and Youth Services ("CYS") was the party responsible for failing D.M.  (*Id.* ¶ 16.)

During the course of discovery in his criminal case, Bowie received various documents concerning investigations into D.M.'s death, including documents from CYS.  (*Id.* ¶¶ 10, 12.)  Before D.M.'s death, Mercado made a report to CYS expressing concern for D.M.'s wellbeing.  (*Id.* ¶ 11.)  Mercado's report, and the documents associated with the investigation stemming therefrom, were part of the documents available to Bowie in his ongoing criminal case.  (*Id.* ¶ 12.)  After Bowie received these documents, he sent them to Mercado, who posted them to the Justice for Dante Facebook page as additional evidence of CYS's alleged failings surrounding D.M.'s death.  (*Id.* ¶¶ 14, 16.)

On January 26, 2021, Mercado was charged with Unauthorized Release of Information, pursuant to 23 Pa. Cons. Stat. § 6349(b).  (Doc. 24-1, p. 5.)[2]  Section 6349(b) reads as follows:

> (b)  Unauthorized release of information.--A person who willfully releases or permits the release of any information contained in the Statewide database or the county agency records required by this chapter to persons or agencies not permitted by this chapter to receive that information commits a misdemeanor of the second degree. Law enforcement officials shall insure the confidentiality and security of information under this chapter. A person, including a law enforcement official, who violates the provisions of this subsection shall, in addition to other civil or criminal penalties provided by law, be denied access to the information provided under this chapter.
>
> (b.1)  Unauthorized access or use of information.--A person who willfully accesses, attempts to access or uses information in the Statewide database for a purpose not authorized under this chapter commits a misdemeanor of the second degree. A person who uses information in the Statewide database for a purpose not authorized under this chapter with intent to harass, embarrass or harm another person commits a misdemeanor of the first degree.

23 Pa. Cons. Stat. § 6349(b).  On September 10, 2021, the Commonwealth filed a motion to dismiss the charges against Mercado.  (Doc. 24-1, p. 5.)

On October 5, 2021, the prosecutors in the case against Bowie filed a motion for the court to enter a protective order precluding the dissemination

---

[2] Documents 24 and 24-1 were filed under seal.  For ease of reference, the court utilizes the page numbers from the CM/ECF header.

or distribution of confidential CYS records.[3] (Doc. 24-1.) The motion included extensive and specific allegations that Mercado was knowingly disseminating these records. Prosecutors asserted that this dissemination could "jeopardize[e] the right to a fair trial for all parties and irreparably harm[] the dignity, privacy and reputation of D.M. through extrajudicial misuse of these materials." (*Id.* at 7.)

On October 11, 2021, Judge Snyder granted the Commonwealth's motion and issued an order that purported to restrain the dissemination of the CYS documents disclosed during discovery in Bowie's case and ordered that any documents already posted online be removed or taken down, including those posted to the Justice for Dante Facebook page. (Doc. 1, ¶ 17; Doc. 6, p. 23.) On October 12, 2021, Judge Snyder issued a second order, which is identical to the October 11, 2021 order, except that it directs copies of the order to be served on counsel for Mercado, who was not a party to Bowie's criminal case. (*Id.* ¶¶ 19–21.) These orders (collectively, the "protective orders") state that:

> AND NOW, TO WIT, it is hereby ordered and directed that any individuals in possession of any discovery material and/or Confidential Child Protective Services records related to D.M. and the prosecution of the above-captioned matter are hereby precluded from disseminating or distributing those records unless permitted by further Order of Court. Distribution shall include physically providing, mailing, emailing,

---

[3] Although the order is dated October 4, 2021, Judge Snyder asserted that it was not filed until October 5, and Mercado did not dispute that fact. (Doc. 35, ¶ 7; Doc. 41, ¶ 7.)

> and/or posting on the internet. All records that have been posted on the internet shall be removed.

(*Id.* ¶¶ 18, 20.) As a result, Mercado alleges that she faces contempt proceedings if she does not comply with Judge Snyder's protective orders, thus forcing her to remove all postings that have been available on the Justice for Dante Facebook page for over a year. (Doc. 1-2, pp. 2, 4.)

Mercado filed the instant complaint on October 13, 2021, seeking declaratory and injunctive relief on the ground that Judge Snyder's protective orders unconstitutionally infringe on her First Amendment right to free speech and should not be enforced.[4] (Doc. 1, pp. 9–10.) On May 20, 2022, the court granted in part Judge Snyder's motion to dismiss. (Doc. 28.) In doing so, the court dismissed Mercado's claims for injunctive relief, leaving only her claims for declaratory relief. (*Id.*) On September 30, 2022, Mercado and Judge Snyder filed cross-motions for summary judgment. (Docs. 33, 36.) The cross-motions have been briefed and are ripe. (Docs. 34, 35, 37, 40, 41, 42, 43.)

---

[4] Mercado filed a motion for a preliminary injunction on October 20, 2021. (Doc. 5.) In preparing to resolve the motion, the court held a telephonic status conference with the parties on October 27, 2021 to set an expedited schedule for the resolution of this motion and to determine whether counsel for Judge Snyder anticipated filing a motion to dismiss the complaint. (Doc. 8.) During this call, defense counsel indicated that Judge Snyder planned to hold a hearing on the protective orders, thus presenting an opportunity for Mercado to be heard on her constitutional challenges. (Doc. 8.) Judge Snyder held such a hearing on November 5, 2021, but Mercado did not attend this proceeding, despite having notice of the proceeding. (Doc. 12.) Since Mercado did not attend, Judge Snyder did not modify or rescind the protective orders. (*Id.*) The court denied the motion for a preliminary injunction on November 19, 2021. (Doc. 19.)

Meanwhile, in two related cases, Mercado and Schrader filed suits against Sunday and Pennsylvania Attorney General, Josh Shapiro, in their official capacities.[5]  (Doc. 24-1, p. 6.)  The suits sought to enjoin Sunday and Shapiro from bringing criminal charges against Mercado and Schrader under § 6349(b) for disseminating CYS documents.  In *Schrader*, this court granted Schrader a preliminary injunction, enjoining the Commonwealth from criminally prosecuting or taking other adverse action against Schrader under the Pennsylvania Child Protective Services Law for the dissemination of CYS documents.  *Schrader*, 603 F. Supp. 3d 124 (M.D. Pa. May 16, 2022).  David Sunday appealed this order to the Third Circuit, and the Third Circuit affirmed except for those portions for which it lacked jurisdiction.[6]  74 F.4th 120 (3d Cir. 2023).

Based in part on the Third Circuit decision in *Shrader*, the court ordered supplemental briefing in this case from Mercado and Judge Snyder to address three issues: (a) whether the underlying criminal action against Tyree Bowie is resolved; (b) if so, to what extent such resolution impacts the enforceability of Judge

---

[5] *Mercado v. Sunday et al.*, No. 1:21-cv-1631 (M.D. Pa.) ("*Mercado I*"); *Schrader v. Sunday et al.*, No. 1:21-cv-1559 (M.D. Pa.).

[6] The Third Circuit concluded that it lacked appellate jurisdiction over the Attorney General's challenge because, although he had filed a brief as an appellee, he had not appealed the injunction.  74 F.4th at 124.  Additionally, the court concluded that, while Schrader had standing to enjoin prosecution for sharing documents "now in her possession," she lacked standing to enjoin prosecution for sharing documents "otherwise coming into her possession."  *Id.* at 124–25.  For the latter issue, this court lacked jurisdiction, too.  This court amended its preliminary injunction accordingly.  *Schrader*, No. 21-cv-1559, Doc. 58 (M.D. Pa. Aug. 10, 2023).

Snyder's orders at issue in this case; and (c) if the orders are unenforceable, how that fact impacts either subject matter jurisdiction or the parties' arguments regarding summary judgment. (Doc. 45.) Mercado filed a supplemental letter, Judge Snyder filed a responsive letter, and Mercado filed a notice that she declined to file a reply. (Docs. 46, 47, 48.) Regarding the first point, Mercado and Judge Snyder both acknowledge in their supplemental letters that Bowie was acquitted. (Docs. 46, 47.)

## STANDARD OF REVIEW

Pursuant to Article III of the Constitution, federal courts have jurisdiction over "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. This means that "federal courts can entertain actions only if they present live disputes, ones in which both sides have a personal stake." *Hartnett v. Pa. St. Educ. Ass'n*, 963 F.3d 301, 305 (2020) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 492–93 (2009)). Although a case began with a live dispute, a court may decide that it has lost jurisdiction to hear the case where "some development has mooted the case" to the point that "there is no longer a live controversy." *See id.* at 305–06 (citations omitted).

But it is a heavy burden to show that mootness exists. *Id.* A defendant asserting mootness must show that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Clark v. Governor*

*of N.J.*, 53 F.4th 769, 776 (3d Cir. 2022).  Once a controversy is moot, any declaratory judgment which the court renders would be an advisory opinion.  *Hartnett*, 963 F.3d at 308.  This renders a plaintiff's proposed remedy out of reach, because federal courts "do not render advisory opinions."  *Golden v. Zwickler*, 394 U.S. 103, 108 (1969).  In short, district courts lack subject matter jurisdiction once a controversy has become moot.  *Goodmann v. People's Bank*, 209 F. App'x 111, 113 (3d Cir. 2006).

    Courts are reluctant to declare a case moot based on unilateral action taken by a defendant after the litigation began.  *Hartnett*, 963 F.3d at 306.  Such voluntary cessation will only moot a case if it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  *Id.* (citation omitted).  Sometimes "the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness."  *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)).  When mootness is based on cessation of action by the defendant, whether voluntary or otherwise, the key question is always whether they "could reasonably be expected to engage in the challenged behavior again."  *Id.* at 306 (citing *Friends of the Earth*, 528 U.S. at 189).

In this regard, a defendant's reason for cessation may be probative. *Id.* Courts are understandably skeptical of mootness claims when a defendant's change in conduct occurs "in the face of a court order" while the defendant assures the court that "the injury will not recur, yet maintains that its conduct was lawful all along." *Id.* By contrast, where a defendant "ceases because of a new statute or a ruling in a completely different case, its argument for mootness is much stronger." *Id.* at 307 (citation omitted).

## DISCUSSION

Mercado's position is that, because the protective orders "contain no temporal limitation" and because Judge Snyder stated that the orders were issued, in part, to vindicate state privacy rights, the orders remain in force notwithstanding Bowie's acquittal. (Doc. 46, p. 3.) She asserts that publication of "the information covered by the orders" would subject her to "a charge of contempt of court." (*Id.*) She states that, to the best of her knowledge, Judge Snyder has not taken action to vacate the protective orders. (*Id.*) For those reasons, she asserts that the controversy remains live. (*Id.*)

Judge Snyder agrees that the protective orders do not contain language providing for their expiration. (Doc. 47, p. 1.) Nor has his counsel identified Pennsylvania law suggesting that such an order would automatically expire, or definitively not expire, once the underlying case is resolved. (*Id.*) However, Judge

Snyder contends that he entered the protective orders within his judicial capacity pursuant to the Commonwealth's motion for protective order. (*Id.*; Doc. 24.) Judge Snyder asserts that he "has not and has no intention to sua sponte enforce" the protective orders. (Doc. 47, p. 1.) He points out that in the nearly two years since he issued the orders, no action has been brought to enforce them, including by the Commonwealth, which moved for their issuance. (*Id.* at 1–2.)

Judge Snyder also posits that, if a motion were brought in state court to enforce the protective orders, as a preliminary step, the state court would have to make a judicial determination as to the validity of the orders in light of the case being closed. (*Id.* at 2.) Judge Snyder also points out that, should the Commonwealth attempt to enforce the protective orders, the state court would also have to consider whether the orders are enforceable in consideration of the Third Circuit's holding in *Schrader*. (*Id.*) Judge Snyder posits that, in the absence of any pending motion at the state court level, if this federal district court were to opine on the enforceability of the protective orders, it would amount to an advisory opinion. (*Id.*)

**A. Voluntary cessation does not apply to Judge Snyder.**

In this case, Judge Snyder issued the protective orders upon the Commonwealth's motion. In the two years since he issued the orders, there has been no attempt, upon motion of the Commonwealth or otherwise, to enforce the

orders. Judge Snyder also has not been asked to vacate the protective orders by the Commonwealth or Mercado and he has not vacated the orders *sua sponte*. It is clear that Judge Snyder was not acting on his own initiative to issue the protective orders, has never been asked by the Commonwealth to enforce them, and also has not been asked to vacate them. In this context, the idea of voluntary cessation simply does not apply.

### B. It is absolutely clear there is not a reasonable likelihood that Judge Snyder will enforce the protective orders.

There is no indication that Judge Snyder will enforce the protective orders on his own initiative. Additionally, there is not a reasonable likelihood that the Commonwealth would seek to enforce the protective orders for two reasons. The first reason is that the Bowie case is closed, and Bowie was acquitted. As a result, there is no apparent reason why the protective orders would be enforced at this juncture. In addition, the Third Circuit has affirmed this court in enjoining the Commonwealth from prosecuting Schrader under § 6349(b) regarding the CYS documents at issue in the instant case, because such prosecution would be an unconstitutional violation of Schrader's First Amendment rights. Because the enforcement of Judge Snyder's protective order against Mercado would give rise to similar First Amendment implications as prosecuting the same conduct under § 6349(b) regarding the same set of CYS documents, it is extremely unlikely that the Commonwealth would seek enforcement of the protective order.

11

Even in the very unlikely event that the Commonwealth would attempt an end run around the Third Circuit's ruling in *Schrader* by seeking enforcement of the protective orders, the court accepts Judge Snyder's representations of the necessary steps that he would be required to take before addressing the merits of such a motion to enforce. He would first have to make a judicial determination as to whether the order was still valid despite the criminal case having concluded. He would also have to assess the validity of the protective orders in light of the Third Circuit's opinion in *Schrader*. It is not clear that Judge Snyder would find the protective orders enforceable for either or both reasons.

In sum, the court finds it is absolutely clear that there is not a reasonable likelihood that Judge Snyder will enforce the protective orders. There is no reasonable likelihood that he will enforce them on his own initiative. There is no reasonable likelihood that the Commonwealth will seek their enforcement. And even in that unlikely scenario, it is very unlikely that Judge Snyder would find the protective orders enforceable. For these reasons, the court concludes that this case no longer involves a live conflict. It is now moot. Because this action is moot, the court lacks subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, the court will dismiss this action. And appropriate order will follow.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: October 27, 2023